UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALBERTO RODRIGUEZ,
BRAULIO LOPEZ,
JOSELITO PEREZ,
EDUARDO CRUZ,
JOSE DIAZ,
JOSE LAZA,
DANIEL TORRES,
JESUS FUENTES,

                              Plaintiffs,

        v.                                           DECISION AND ORDER

                                                  Case No. 11-CV-6256FPG

CITY OF ROCHESTER,
MANAGER KAREN ST. AUBIN,
COMMISSIONER PAUL HOLOHAN,

                           Defendants.

_____

## I.      Introduction

    This case involves allegations that the Defendants, City of Rochester and two municipal officials, pursuant to an officially promulgated policy, violated the constitutional rights of Plaintiffs, eight Hispanic, City of Rochester employees who claimed that they were not permitted to speak Spanish during their casual, non-work related conversations. In its present posture, the Court is called upon to determine a post-verdict motion alleging that the trial evidence was legally insufficient to warrant the jury's finding in favor of Plaintiffs against one of the municipal officials under 42 U.S.C. § 1983, or in the alternative, whether a new trial should be ordered. *See* Fed. R. Civ. P. 50(b) and 59. For the reasons discussed herein below, the Court finds that evidence of a § 1983 constitutional violation on the part of this named municipal

official was insufficient to support the jury's verdict.  I hereby direct judgment as a matter of law in her favor.

## II.      Background

Plaintiffs Alberto Rodriguez ("Rodriguez"), Braulio Lopez ("Lopez"), Joselito Perez ("Perez"), Eduardo Cruz ("Cruz"), Jose Diaz (Diaz), Jose Laza ("Laza"), Daniel Torres ("Torres"), and Jesus Fuentes ("Fuentes") filed a Complaint on May 12, 2011, pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983, against Defendants City of Rochester ("City of Rochester"), Manager Karen St. Aubin ("Manager St. Aubin") and Commissioner Paul Holohan ("Commissioner Holohan"), alleging disparate treatment and hostile work environment due to their race and violations of their liberty interests in the choice of language protected by the First and Fourteenth Amendments to the United States Constitution, all stemming from and predicated upon an "officially adopted English language only policy of the City of Rochester."  ECF No. 1. Thereafter, following the written request of Plaintiffs' attorney for a trial (ECF No. 11), this Court issued a Pretrial Order scheduling the matter for a jury trial to begin on July 8, 2013 (ECF No. 14).

A jury trial commenced on July 8, 2013 and concluded on July 12, 2013.  At the close of Plaintiffs' case, Defendants made a motion pursuant to Rule 50(a) of the Federal Rules of Civil Procedure based upon the failure of proof of each of Plaintiffs' causes of action as set forth in the Complaint, arguing the absence of any proof of discrimination or a hostile work environment, the lack of any evidence of an English-only policy by the City of Rochester and contending that no damages were available to Plaintiffs.  Following the close of all proof, Defendants renewed their Rule 50(a) motion on the same grounds.

The jury returned verdicts finding no cause for action against the Defendants City of Rochester, Commissioner Holohan and Manager St. Aubin on claims brought pursuant to 42

U.S.C. § 1981 alleging discrimination and a hostile work environment on the basis of race. Jurors also returned verdicts finding no cause for action against Defendants City of Rochester and Commissioner Holohan on each Plaintiff's § 1983 claim alleging impairment of the "liberty interest in his choice of language, protected by the First and Fourteenth Amendment to the United States Constitution," but returned verdicts finding that each Plaintiff's liberty interest in his choice of language was impaired by Defendant Manager St. Aubin. As to Manager St. Aubin, the jury awarded to each Plaintiff compensatory damages in the amount of $2500.00 and punitive damages in the amount of $2500.00.

Immediately following the verdicts and based upon the Court having reserved decision on this issue, defense counsel orally moved for dismissal of the punitive damages awards against Manager St. Aubin and requested a motion date for the filing of post-verdict motions. The Court gave Plaintiffs the opportunity to respond to Defendant's oral motion and granted Defendant's request for the post-verdict motion filing date.

Plaintiffs filed a Memorandum response in opposition to Defendant's oral motion seeking dismissal of the punitive damages award against Manager St. Aubin. ECF No. 25. The attorney for Plaintiffs filed a Notice of Motion (ECF No. 27), along with accompanying Declaration ("Agola Decl.") (ECF No. 27-1), supporting exhibits ("Ex. A-C") (ECF Nos. 27-2, 27-3, 27-4), and a Memorandum of Law ("Agola Mem.") (ECF No. 27-5), seeking an order awarding attorney's fees in the amount of $69,000.00.

Now pending before the Court for determination is Defendant's post-trial Notice of Motion ("Def. Motion") (ECF No. 31), together with supporting papers consisting of Exhibits ("Def. Ex."), Attorney Declaration ("Def. Decl.") (ECF No. 31-1), Memorandum of Law ("Def. Mem.") (ECF No. 31-2) filed pursuant to Fed. R. Civ. P. 50(b) and 59, seeking an Order setting

aside the verdict, specifically, granting Manager St. Aubin judgment as a matter of law ("JMOL") dismissing all claims and verdicts against her under Rule 50(b), including the award of punitive damages or, in the alternative, granting her a new trial under Rule 59, and further in the alternative, if such relief is not granted, a reduction in the amount of attorney fees sought by application dated July 23, 2013.  ECF No. 31.  Defendant separately submitted Trial Transcript Excerpts ("Def. Tr. Exc.") consisting of Plaintiffs' trial testimony taken on July 9, 2013 and July 10, 2013.[1]

Plaintiffs filed their response in opposition to Defendant's Rule 50(b) motion to set aside the verdict, including a Memorandum of Law ("Pls.' Mem.") (ECF No. 33) and a Declaration ("Pls.' Decl.") (ECF No. 33-1).  Plaintiffs also attached Trial Transcript Excerpts ("Pls.' Tr. Exc.") consisting of Plaintiffs' trial testimony taken on July 9, 2013 and July 10, 2013.[2] Defendant filed a Reply Declaration ("Def.'s Reply Decl.") (ECF No. 36) and a Reply Memorandum of Law ("Def.'s Reply Mem.") (ECF No. 36-1).

Subsequent to filing their responsive submissions, Plaintiffs' attorney Christina A. Agola, was suspended from the practice of law before the Western District Court.[3]  Plaintiffs have retained new counsel, Melvin Bressler, Esq., who has appeared and, based upon his review of the case file, requested additional time to supplement Plaintiffs' earlier responses.  Having granted this request, the Court also permitted additional time for counsel for the Defendant to file any submissions in response thereto.  The filing deadlines expired, and no additional submissions were received by the Court.  Several weeks following the expiration of the time within to submit

---

[1] The trial transcript excerpts submitted by both Plaintiffs and Defendant will be collectively referred to hereinafter as "Trial Tr. Exc."
[2] See n.1 above.
[3] Western District Chief Judge William M. Skretny entered the Order of Suspension on September 13, 2013.

these supplemental responses, Plaintiffs' attorney sought additional time to file.  However, the Court denied this request.

### III.   <u>Discussion</u>

### A. Legal Standards

Under Rule 50(a), a party who has been fully heard on an issue may move for judgment as a matter of law during trial at any time prior to submission of the case to the jury.  Fed. R. Civ. P. 50(a)(1)(2).  When making this motion, the party must "specify the judgment sought and the law and facts that entitle the movant to judgment."  *Id.*  It is noteworthy that the identical standard applies to motions for judgment as a matter of law during or after trial under Rule 50 and pretrial summary judgment motions pursuant to Rule 56.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986) (motion for summary judgment standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)"); Fed. R. Civ. P. 50, advisory committee's note (1991 amendment) (declaring name change to call attention to the close relationship between Rule 50 and Rule 56).

A Rule 50(b) motion is only a renewal of an earlier preverdict motion made pursuant to Rule 50(a).  Fed. R. Civ. P. 50(b).  Under Rule 50(b), if a jury returns a verdict for which there is not a legally sufficient evidentiary basis, the court may either order a new trial or direct entry of judgment as a matter of law.  *Id.*  Propriety of judgment as a matter of law is considered within the framework of the substantive law.  Thus, under Rule 50, a court may grant a motion for judgment as a matter of law if, upon a review of all of the evidence, drawing all reasonable inferences in favor of the nonmoving party, and without making credibility determinations or otherwise considering the weight of the evidence, there is not a legally sufficient evidentiary basis to permit a reasonable jury to find for the nonmovant under the governing law.  *See Tolbert*

*v. Queens College*, 242 F.3d 50, 70 (2d Cir. 2001); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir. 1988).  A court should review *all* of the evidence in the record.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 150-152 (2000) (internal citations and quotations omitted) (A court, reviewing all of the record evidence, "must disregard all evidence favorable to the moving party that the jury is not required to believe – [] giv[ing] credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."); *see also Obabueki v. Choicepoint, Inc.*, 236 F. Supp. 2d 278, 282 (S.D.N.Y. 2002), *aff'd sub nom. Obabueki v. International Business Machines Corp.*, 319 F.3d 87 (2d Cir. 2003).  The Court may properly grant the motion only if there is "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the [moving party] that reasonable and fair minded men could not arrive at a verdict against [the moving party]." *Gronowski v. Spencer*, 424 F.3d 285, 292 (2005) (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995)) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992)).

At the time a renewed motion pursuant to Rule 50(b) is filed, a party may include an alternative or joint request for a new trial under Rule 59.  Fed. R. Civ. P. 50(b).  Pursuant to Rule 59(a)(1), generally, a court, on motion, may order a new trial on all or some issues to any party, after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court, provided such motion is timely made within 28 days after the entry of judgment.  Fed. R. Civ. P. 59(a)(1).  A new trial is justified when the trial judge, free to weigh the evidence himself, finds that "the jury has reached a seriously erroneous result or … the

verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (Although the "trial judge is free to weigh the evidence himself, … the court should only grant [a motion for a new trial] when the jury's verdict is 'egregious.'") (citing *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)).

### B. Defendant's Rule 50(b) Motion

In support of her motion to set aside the verdict pursuant to Rule 50(b), Defendant makes several assertions.   Namely, Defendant asserts the following: (1) evidence in the record overwhelmingly supports Manager St. Aubin's claim that she requested only that English be spoken when she, as their immediate supervisor, was addressing Plaintiffs in their work capacity and only as she was attempting to communicate City business; (2) the testimony of Plaintiffs appearing in the record is so sparse regarding the allegation of impairment of choice of language that it does not rise to the level of violations of the First and Fourteenth Amendments as set forth in the verdict sheets and, upon review, transcripts of Plaintiffs' testimony do not offer evidence of a violation of their liberty interests; (3) Manager St. Aubin was sued in her official capacity, therefore, the real party in interest is the City of Rochester which is shielded from liability because the record clearly demonstrates the absence of a requisite systematic pattern or practice, supported by misconduct so severe and pervasive; (4) the finding of liability against Manager St. Aubin in her official capacity is inconsistent with the jury's verdicts of no liability against the City on all claims; (5) absent from the record is required evidence of municipal custom, policy or practice that was the moving force behind the alleged constitutional violations; and (6) Manager St. Aubin could not be subject to liability as an official of the City of Rochester because she had no "final policymaking authority."   ECF No. 31-2.

Responding in opposition thereto, Plaintiffs argue that (1) the City's motions to set aside the jury verdict based upon the legal insufficiency of the evidence are defective as a matter of law due to waiver and the limitations upon arguments not made at the trial; (2) the City's motion to set aside the jury verdict regarding the award of punitive damages against Manager St. Aubin is defective as a matter of law under Rule 50(b); (3) the City's motion for a new trial under Rule 59(e) is equally defective as a matter of law; and (4) in the Second Circuit, Plaintiffs' attorney's fees are not proportional to damages recovered.  ECF No. 33.

### 1. Plaintiffs' Waiver Arguments

### a. Renewal of Rule 50(a) Motion

The Court turns first to Plaintiffs' initial argument that Defendants' Rule 50(b) motion is defective as a matter of law because Defendants waived any objection to the legal sufficiency of the evidence by failing to renew the Rule 50(a) motion at the close of all the evidence. Plaintiffs' arguments that Defendants' omitted to raise their claims of overwhelming evidence favoring Manager St. Aubins' work-related requests to speak English and her official capacity at the close of all the evidence, lack merit.

Inherent in Plaintiff's waiver argument is a tacit acknowledgement that Defendants argued the insufficiency of the evidence on the asserted grounds in the Rule 50(a) motion made at the time Plaintiffs rested their case.  Indeed, the transcribed record of the trial proceedings[4] reflects that at the time they made this motion, Defendants argued Plaintiffs' failure to prove the § 1983 violation set forth in their Complaint against all Defendants, due to the absence of any evidence that the City of Rochester had an English language only policy in the workplace

---

[4] The Court has necessarily reviewed pertinent portions the stenographic record regarding the Rule 50 arguments which was filed on December 10, 2013.  ECF No. 43, 1-10.

pursuant to which the alleged constitutional violations occurred, and in light of testimony presented in Plaintiffs' own case, there was no evidence that the City engaged in any discrimination policy.  ECF No. 43, 1-10.  Defendants also argued that no damages were available to Plaintiffs.  *Id.*  The transcribed trial record demonstrates that following the close of all evidence, Defendants renewed the earlier-made Rule 50(a) motion on these same grounds. *Id.*

This record sufficiently demonstrates Defendants' preservation of the right to renew these arguments in a timely filed Rule 50(b) motion.  Where, as here, the court did not grant the Defendants' Rule 50(a) motions made at the time Plaintiffs rested and at the close of the evidence, the matter was deemed submitted to the jury subject to the court's later determination of the legal questions raised by the motion.  Fed. R. Civ. P. 50(b).

Significantly, Rule 50(a), as configured currently and at the time this action was commenced, contains no provision mandating renewal at the close of all evidence of objections to the legal sufficiency of the evidence.  As declared in the Advisory Committee Notes to the 2006 Amendment of Rule 50, no such requirement exists:

> Rule 50(b) is amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all evidence…This change responds to many decisions that have begun to move away from requiring a motion for judgment as a matter of law at the literal close of all the evidence. Although the requirement has been clearly established for several decades, lawyers continue to overlook it. The courts are slowly working away from the formal requirement. The amendment establishes the functional approach that courts have been unable to reach under the present rule and makes practice more consistent and predictable. Many judges expressly invite motions at the close of all the evidence. The amendment is not intended to discourage this useful practice.

Fed. R. Civ. P. Rule 50(b), advisory committee's note (2006 amendment).  The cases cited by Plaintiffs for the proposition that a motion must be made at the close of all evidence pre-dated

the 2006 amendment of Rule 50 and are inapposite.  In the absence of an omission on the part of Defendants to comply with a requirement set forth in the rule, waiver principles do not apply.

### b.  Official Capacity

Plaintiffs further assert that Defendants cannot argue for the first time in their written Rule 50(b) motion that Manager St. Aubin was sued only in her official capacity.  Specifically, Plaintiffs contend that because Defendants failed to include in their Rule 50(a) motion arguments at the close of Plaintiffs' case any mention of St. Aubin being sued only in her official capacity, waiver principles preclude the making of such arguments for the first time in their Rule 50(b) motion.  This contention, too, must fail.

First, absent from the caption of Plaintiffs' Complaint is any indication that either Manager St. Aubin or Commissioner Holohan was being sued in some capacity other than in her/his official role as a City of Rochester employee.  *See* ECF No. 1.  The caption specified only that the action was being brought against Defendants "City of Rochester," "Manager Karen St. Aubin" and "Commissioner Paul Holohan," without explicitly stating that the named municipal officials were being sued in their individual capacities.  *Id.*  That being said, when, as in this case, the Complaint does not specify whether a named municipal official is being sued in his/her individual capacity, official capacity or both, "the course of proceedings" will typically indicate the nature of the liability sought to be imposed.  *Rodriguez v. R.J. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995) ("Where, as here, doubt may exist as to whether an official is sued personally, in his official capacity or in both capacities, the course of proceedings ordinarily resolves the nature of the liability sought to be imposed.").

Turning to the course of the proceedings in this case, Plaintiffs, according to their Complaint, sought declaratory relief and punitive and compensatory damages due to being

aggrieved by an officially promulgated English-only policy and its enforcement by Manager St. Aubin and Commissioner Holohan as "state actors" and as representative of the City of Rochester itself.   Defendants filed an Answer to the Complaint which did not set forth any personal affirmative defense such as qualified immunity[5] on behalf of either Commissioner Holohan or Manager St. Aubin.   Instead, Defendants, by their Answer's First Affirmative Defense, relied on the following: "Punitive Damages cannot be awarded against a municipality or any individuals whom a municipality is required to defend and indemnify."

In keeping with this view of the nature of the action filed against them, Defendants directed their Rule 50(a) motion arguments to Plaintiffs' omission to prove during the course of the trial the existence of any English-only policy or any discrimination on the part of Defendants flowing therefrom in violation of Plaintiffs' federal rights.   Moreover, regarding the Second Cause of Action at issue, Plaintiffs requested against all Defendants compensatory damages only. Plaintiffs cannot now be heard to complain that notwithstanding their omission to provide notice to the City of Rochester regarding their intention to sue Manager St. Aubin in other than her official capacity, Defendants should be penalized for having failed to divine their intentions to do so with respect to this particular cause of action.   As such, I reasonably conclude, upon review of the course of proceedings in this case, that Plaintiffs sued Manager St. Aubin in her official capacity only, as the City of Rochester was the real party in interest.   *See e.g., Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988).

---

[5] "Qualified immunity is a defense available only to individuals sued in their individual capacity." *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013).   The qualified immunity doctrine shields government officials from liability for civil damages resulting from the performance of discretionary functions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### c. Punitive damages

Continuing its press for application of waiver, Plaintiffs also argue that because Defendants failed to raise the issue of punitive damages until after the jury rendered its verdict, they waived any argument that such damages could not be awarded against Manager St. Aubin. Contrary to this argument, the trial record discloses otherwise.

The Court reviewed the proposed Verdict Sheet with counsel during the charge conference held on July 11, 2013, stating that counsel could review it overnight and raise any additional issues regarding the charges set forth therein the next morning. When the Court re-visited the Verdict Sheet and inquired of the parties regarding any further concerns following their overnight review, Defense counsel raised the issue of indemnification as set forth as the First Affirmative Defense in their Answer and asserted the inability of the jury to award punitive damages with respect to either municipal official. Unfortunately, this exchange took place after the jury had been charged. The Court noted defense counsel's exception and indicated that it would deal with this issue by motion after the jury returned. Upon the pronouncement of the jury verdicts, and pursuant to the Court's earlier statement regarding when it would address this issue, Defense counsel, again, voiced his position that punitive damages were not available to these Plaintiffs and orally moved for dismissal of the amounts awarded. Viewing the totality of these circumstances, no waiver in the manner asserted by Plaintiffs occurred, and Defendant retained the right to assert the unavailability of punitive damages in the Rule 50(b) motion.

In any event, in view of Plaintiffs' concession that punitive damages are not available against a municipality for § 1983 violations, see *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), and the Court's determination herein that Manager St. Aubin was sued in her official

capacity only, *i.e.*, the City of Rochester was the real party in interest, *see Ivani Contracting Corp v. City of New York*, 103 F.3d 257 (2d Cir. 1997), *cert denied* 520 U.S. 1211 (1997), the punitive damages award erroneously made to each Plaintiff, must be set aside and dismissed.[6] Furthermore, the cases cited by Plaintiffs dealing with the availability of punitive damages against public officials sued in their individual capacities in situations "involv[ing] reckless or callous indifference to the federally protected rights of others," *see, e.g., Smith v. Wade*, 461 U.S. 30, 56 (1983) (holding that in a § 1983 action, a jury may assess punitive damages against an individual public officer whose conduct is shown to be motivated by evil motive or intent, or where such conduct involves reckless or callous indifference to the federally protected rights of others), are inapposite in the instant circumstances and do not represent controlling law in this case.  I find that even if Plaintiffs had sued Manager St. Aubin in her individual capacity, the record is devoid of any evidence of an "evil motive or intent" or "callous indifference" that is indispensable to an award of punitive damages. *See Id.*

### 2. Legal Sufficiency of the Evidence

The second cause of action set forth in the Complaint, alleged the following in paragraphs numbered 46, 47 and 48, respectfully:

> "The English-only policy impairs the Plaintiffs' liberty interests in choice of language as protected by the First and Fourteenth Amendments and the penumbra of rights protected by the Bill of Rights of the United States Constitution.

> "The impairment created by the policy as applied to existing employees is unreasonable and unnecessary and is designed to single out a particular nationality/race (Hispanic).

> "Each Plaintiff has suffered injuries to such rights which have caused them emotional distress and other harm and for which each is entitled to compensatory damages."

---

[6] I agree that the jury may have been misled by the Verdict Sheet which contained a provision for an award of punitive damages against St. Aubin, but not against Holohan when both were sued in their official capacities.

ECF No. 1.   Pursuant to this cause of action, Plaintiffs sought civil liability under § 1983 which is imposed upon any person who, under color of state law, subjects an individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States.[7]  *See* 42 U.S.C. § 1983; *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 137 (2d Cir. 1999).   Section 1983, itself, is not "'a source of substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n.3, (1979)).   Here, Plaintiffs alleged violations, flowing from an English-only policy, of their rights pursuant to the First[8] and Fourteenth Amendments[9] of the United States Constitution.

---

[7] 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

[8] The First Amendment provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

U.S. CONST. amend. I.

[9] The Fourteenth Amendment provides:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

U.S. CONST. amend. XIV.

Transcribed portions of the trial consisting of the direct and cross examination testimony of each of the eight Plaintiffs have been submitted as attachments to the parties' papers.  Upon review, the central thread running through the testimony offered in support of Plaintiffs' § 1983 claims pertained to at least one recollected occasion, whereby each Plaintiff, an American citizen[10] and bilingual speaker of Spanish and English,[11] was told by Manager St. Aubin, operations manager and Commissioner Holohan, to speak English, not Spanish in circumstances not involving work assignments.   A review of the transcribed trial minutes reveals the following testimony regarding the circumstances surrounding these encounters.

Plaintiff Rodriguez, operations supervisor in the Street Maintenance Department and a City employee since 1973, testified to encounters with Manager St. Aubin on two occasions. First, in November 2010, he accompanied Mr. DeJesus, a seasonal employee, to Manager St. Aubins' office to discuss a seasonal work timeframe with her and, when DeJesus sought to speak to him in Spanish, Manager St. Aubin said "No Spanish in my office." (Trial Tr. Exc. 6-8). Rodriguez testified that he thanked her, and they left her office. Then, in late February or early March, he was having a casual conversation with Tony Despaigne in the street maintenance garage when, after exchanging morning greetings with Manager St. Aubin, she said, "No Spanish on my job." (Trial Tr. Exc. 9-10).  According to his testimony, Rodriguez was surprised

---

[10] Although, upon review, the transcribed trial minutes reveal that Rodriguez, Fuentes, Diaz, Cruz, Perez and Laza testified to being either native born or naturalized American citizens and bilingual speakers of Spanish and English (Trial Tr. Exc. 3-5, 34-35, 54-55, 73-74, 108-109, 129-130), these minutes do not reveal any testimony by Lopez and Torres regarding American citizenship.  Defense counsel raised concerns about United States citizenship during the charge conference, but was assured by Plaintiffs' attorney that all were citizens.  No issue regarding these omissions has been raised by Defendants in their motion to set aside the jury's verdict, and the Court has not addressed any such issue in the determination of the motion.

[11] Nor was there any specific testimony by Lopez and Torres regarding their bilingualism.  Lopez, testified that he was told not to speak "my language" (Trial Tr. Exc. 159), and Torres testified regarding the importance of speaking Spanish: "I am proud of who I am and my heritage" (Trial Tr. Exc. 190).

and insulted by these comments and felt bad.  Trial Tr. Exc. 8, 10, 14.   Rodriguez was not

present on any of the occasions testified to by other witnesses regarding their encounters with

Manager St. Aubin concerning speaking English, but he wrote a letter dated April 7, 2011 to

Commissioner Holohan to get him to resolve the Spanish language concerns and attended two

meetings, the first in April 2011 and the second on May 19, 2011, arranged by Commissioner

Holohan for this purpose.[12]  Trial Tr. Exc. 14-18.  Commissioner Holohan told Plaintiffs at the

first meeting that if some non-Spanish people were present, they may get offended if Plaintiffs

speak Spanish.  Trial Tr. Exc. 20-21.  At the second meeting, which took place after newspaper

reports regarding the filing the instant action, Commissioner Holohan presented them with the

City's written non-discrimination policy, which Rodriguez identified as Defendants' Ex. 400.[13]

Trial Tr. Exc. 18.  According to Rodriguez, the written policy did not tell him anything he didn't

already know.  Trial Tr. Exc. 19.

Plaintiff Fuentes, an operations worker with time split between Street Maintenance

(summer) and Special Services (winter) who began as a seasonal employee in 2002, testified that

in December 2010, he and Diaz were speaking Spanish at the end of their break when Manager

St. Aubin said "hey, you guys cut that out, speak English."  Trial Tr. Exc. 37.  Again, in

February 2011, he was speaking Spanish with a co-worker at a special event for night shift

employees when Manager St. Aubin said, "you guys cut that out, speak English."  Fuentes

testified that he felt terrible when he heard these comments, but did not say anything to anyone

until Rodriguez, his supervisor, informed him of the meeting with Commissioner Holohan.  Trial

Tr. Exc. 38-40.  Fuentes testified that he attended the two meetings with Commissioner Holohan,

---

[12] In addition to Commissioner Holohan, Manager St. Aubin and several other City of Rochester representatives also attended these meetings.

[13] Defendants' Ex. 400, a City of Rochester Inter-Departmental Correspondence dated May 19, 2011, is a communication from Tassie Demps, Director/Bureau of Human Resource Management directed to all City employees regarding the subject: *Use of Language in the Workplace*.

and at the second meeting, which took place after newspaper reports regarding the filing the instant action, Commissioner Holohan presented them with the City's written non-discrimination policy which did not tell him anything he didn't already know.  Trial Tr. Exc. 40, 45.

Plaintiff Diaz, an operations worker in Special Services and City employee of 13 years, testified that in December 2010, he was in the ready room speaking in Spanish with Fuentes, when Manager St. Aubin came by and said, "Not Spanish here."  The next time was on April 7, 2011, when he was in a vending room, Manager St. Aubin said, "not here, not my place." According to Diaz, Manager St. Aubin was not talking to him about a work assignment.  Trial Tr. Exc. 72.  Diaz stated that he felt very, very, sad about these comments.  Trial Tr. Exc. 69. Diaz also attended two meetings with Commissioner Holohan, who told them at the first meeting that speaking Spanish in front of non-Hispanics would make them feel uncomfortable (Trial Tr. Exc. 67-68), and at the second meeting, which took place after newspaper reports regarding the filing the instant action, Commissioner Holohan presented them with the City's written non-discrimination policy which did not tell him anything he didn't already know.  Trial Tr. Exc. 59-60, 63.

Plaintiff Cruz testified that he was an operations worker in Special Services when in February 2010, he and Perez were carrying on a casual Spanish conversation in the vending machine room and were told by Manager St. Aubin, "No speaking Spanish," "just no speaking Spanish."  Trial Tr. Exc. 76-77.  He also testified that in March 2011, he and Torres were speaking Spanish about non-work matters with a few other guys and was told he couldn't speak Spanish in the workplace.  Trial Tr. Exc. 77.  He was surprised by Manager St. Aubin's comments, Cruz testified.  Trial Tr. Exc. 76.  He stated that Manager St. Aubin never gave him work assignments.  Trial Tr. Exc. 77.  Cruz attended two meetings with Commissioner Holohan

who told them at one meeting not to speak Spanish around non-Spanish speakers, and at the second meeting, which took place after newspaper reports regarding the filing the instant action, Commissioner Holohan presented them with the City's written non-discrimination policy which did not tell Diaz anything he didn't already know. Trial Tr. Exc. 82-83, 83-85, 86.

Plaintiff Perez, a senior operations worker in Street Maintenance and City employee for 15 years, testified that in February 2011, he was in the vending room area speaking casually in Spanish with Cruz when St. Aubin approached them and said, "no speaking Spanish." Trial Tr. Exc. 109-111. When he asked why, she said "speak Italian." Trial Tr. Exc. 111. Perez testified that he was shocked and demoralized by these comments. Trial Tr. Exc. 111-112. Perez attended only the second meeting with Holohan on May 19. 2011, and at that meeting, which took place after newspaper reports regarding the filing the instant action, Commissioner Holohan presented them with the City's written non-discrimination policy which did not tell him anything he didn't already know. Trial Tr. Exc. 112, 115.

Plaintiff Laza, a Special Services operations worker and City employee since 1999, testified that in March 2011, he was by the vending machine with talking with Cruz and "Mickey," whose last name he couldn't recall, about a non-work matter when St. Aubin first said "good morning" and then turned around to say, "no Spanish." Trial Tr. Exc. 133-134. Laza testified that he was shocked and scared, "Because she's the boss." Trial Tr. Exc. 135. He stated that Manager St. Aubin never gave him work assignments. Trial Tr. Exc. 133. Laza attended two meetings with Holohan, and at the second meeting, which took place after newspaper reports regarding the filing the instant action, Commissioner Holohan presented them with the City's written non-discrimination policy which did not tell him anything he didn't already know. Trial Tr. Exc. 135, 137.

Plaintiff Lopez testified that he was currently "on medical"—"Worker's comp," from his position as an operations worker in Street Maintenance.  Trial Tr. Exc. 153.   He testified that in March 2011, "mostly most of the guys that are here," i.e., Plaintiffs, were all hanging out in the vending machine area casually talking during a shift change when Manager St. Aubin walked by, said "good morning" and they said "good morning," but then she came back from her door and said "don't speak Spanish in my place, don't speak Spanish."   Trial Tr. Exc. 154-155. According to Lopez, he was shocked and surprised by Manager St. Aubin's statements.  Trial Tr. Exc. 155.  He stated that Manager St. Aubin never gave him work assignments.  Trial Tr. Exc. 171.  Lopez attended two meetings with Commissioner Holohan, and at the second meeting, which took place after newspaper reports regarding the filing the instant action, Commissioner Holohan presented them with the City's written non-discrimination policy which did not tell him anything he didn't already know.  Trial Tr. Exc. 157, 159-160.

Plaintiff Torres, a senior equipment operator and a 25-year City employee, testified that in April 2011 or earlier, he was sitting in the vending machine area with Cruz, Laza, Diaz, "Mickey," and a few others, when St. Manager Aubin walked through the hallway and said, "good morning, gentlemen" and they said, "good morning, Karen."   She walked to her door, went in, walked back out and said, "and by the way, no speaking Spanish in my place."  Trial Tr. Exc. 172-175.   They were discussing a non-work topic, and when Torres, said, "with all due respect, you can't say that to me," Manager St. Aubin said, "I can do what I want."  Trial Tr. Exc. 176.   In Torres' words, "I was violated, I was hurt.  I've never been treated like that in my life."  Trial Tr. Exc. 177.  He stated that Manager St. Aubin never gave him work assignments. Trial Tr. Exc. 175, 181.   Torres attended two meetings with Commissioner Holohan, and at the

second meeting, which took place after newspaper reports regarding the filing the instant action, Commissioner Holohan presented them with the City's written non-discrimination policy which did not tell him anything he didn't already know.  Trial Tr. Exc. 179, 184-188.  He stated, that Commissioner Holohan also told them at the second meeting that they could speak Spanish casually, but if non-Spanish speakers were present, they may be offended.  Trial Tr. Exc. 188-189.

In addition to the above testimony, all eight Plaintiffs testified that prior to Manager St. Aubin becoming their operations manager in 2009 or 2010, there was no policy that they were aware of in all of their years of working for the City of Rochester which stated that they could not speak Spanish at work during casual conversations unrelated to business (Trial Tr. Exc. 5, 36, 55, 74, 109-110, 130, 154, 173), and that no previous manager or supervisor had requested that English be spoken in those situations.  Rodriguez, Fuentes, Diaz, Perez, Laza, and Torres each testified that there were no complaints about his speaking Spanish in the workplace.  Trial Tr. Exc. 6, 15, 37, 56, 110, 131-132, 190.

Regarding the Second Cause of Action, the Court instructed the jurors on the elements of Plaintiffs' § 1983 claim which required proof by a preponderance of the evidence that (1) the complained conduct was committed by a person acting under the color of law (an issue not in dispute per this instruction "[b]ecause Karen St. Aubin and commissioner Holohan were officials of the City of Rochester at all relevant times"); (2) the Defendants intentionally deprived Plaintiffs of a right secured to them by the Constitution or laws of the United States; and (3) the Defendants' acts and conduct were the proximate cause of the injuries suffered by Plaintiffs.[14]

---

[14] References to jury instructions on the law are based upon the Court's review of relevant portions of the jury charges contained in the stenographic record provided at the Court's request.

The Court also instructed jurors regarding the First and Fourteenth Amendments. Furthermore, the Court provided the following instructions regarding liability:

> "The plaintiffs contend that the City of Rochester, subordinates, manager Karen St. Aubin, commissioner Paul Holohan violated their federal rights, that the City of Rochester should be liable for manager Karen St. Aubin and commissioner Paul Holohan's conduct.

> "If you find that manager Karen St. Aubin, commissioner Paul Holohan violated plaintiffs' federal rights then you must consider whether the city of Rochester caused manager Karen St. Aubin, and commissioner Paul Holohan's conduct.

> "The City of Rochester is not liable for such a violation simply because the City of Rochester is manager Karen St. Aubin's or commissioner Paul Holohan's supervisor.

> "To show that the City of Rochester caused manager Karen St. Aubin, and commissioner Paul Holohan's conduct the plaintiffs must show one of three things.

> "First: That the City of Rochester directed manager Karen St. Aubin, and commissioner Paul Holohan to take the action in question.

> "Second: The City of Rochester had actual knowledge of manager Karen St. Aubin, and commissioner Paul Holohan's violation of the plaintiff's rights and the City of Rochester acquiesced in that violation.[15]

> "Or third: That the City of Rochester with deliberate indifference to the consequences established and maintained a policy, practice or custom which directly caused the violation."

Measured against these instructions which reflect prevailing legal doctrine as set forth in the relevant case law, the trial evidence was legally insufficient to support the jury's verdict regarding the Second Cause of Action. Viewing the testimony of Plaintiffs most favorably, it cannot be said that a reasonable jury could find for Plaintiffs on this claim.

---

[15] The stenographic record also demonstrates that the Court provided further instructions regarding the term "acquiesce": "To acquiesce in a violation means to give a consent to the violation. Acquiescence does not require a statement of assent out loud. Acquiescence can occur through silent acceptance. If you find that the City of Rochester had authority over manager Karen St. Aubin and commissioner Paul Holohan that the City of Rochester actually knew that manager Karen St. Aubin and commissioner Paul Holohan were violating the plaintiffs' rights but failed to stop manager Karen St. Aubin and commissioner Paul Holohan from doing so, you may infer that the City of Rochester acquiesced in manager Karen St. Aubin and commissioner Paul Holohan's conduct."

To mount a successful § 1983 action against a municipality or municipal employee sued in his or her official capacity, a plaintiff is required to establish: (1) the actions were taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages and (5) that an official policy of the municipality caused the constitutional injury. *See Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978). "Official-capacity suits, [], 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55); *see Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself.").

Generally, to establish the existence of an official policy of the municipality which caused the constitutional injury at issue, a plaintiff is required to prove (1) the existence of a formal policy officially promulgated or adopted by the municipality, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); (2) actions or decisions by an official with final policymaking authority which caused the alleged violations of constitutional rights, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 129-30 (1988); (3) the existence of a custom or practice so permanent, persistent and widespread on the part of subordinate officials such that it constitutes a custom or usage so as to imply the constructive acquiescence of policymaking officials, *see id.* at 130; or (4) the failure of policymaking officials to properly train or supervise their subordinates, amounting to a deliberate indifference to the rights of those encountering municipal employees, *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Accordingly, Plaintiffs needed to establish a direct causal link between a municipal policy or custom and the alleged constitutional violation. *Id.*

First, viewed favorably, the evidence fails to suggest that Plaintiffs adduced testimonial or documentary proof that the City of Rochester, by its own hand, directed its subordinate, Manager St. Aubin, to engage in the complained of conduct by an officially promulgated policy endorsed or ordered by the municipality.  No Plaintiff testified that the City of Rochester directly ordered or endorsed an English-only policy which impaired his liberty interest in choice of language.  According to their collective testimony, it was Plaintiffs' understanding from years of employment with the City of Rochester that they could speak Spanish in casual conversations, anyway.

Second, even accepting the view of Plaintiffs' testimony that Manager St. Aubin was their operations manager and supervisor, and that in her capacity as such, her conduct requesting that they speak English and not Spanish, impaired their liberty interest in choice of language, the record evinces no proof that Manager St. Aubin had final decision-making authority, such that she had the power to establish official policy for the City of Rochester.  *Pembaur v. City of Cincinnnati*, 475 U.S. at 483 (official "must be responsible for establishing final government policy" for municipal liability to attach to his or her decision); *St. Louis v. Praprotnik*, 485 U.S. 112.  Viewed favorably and given credence as a whole, Plaintiffs' own testimony is illustrative in this regard: they took their complaints about Manager St. Aubin to Commissioner Holohan for resolution and he, in turn, sought counsel from other City of Rochester officials, culminating in the written reiteration of the City of Rochester's *Use of Language in the Workplace* practice prepared by the director of the Bureau of Human Resource Management and disseminated to Plaintiffs on May 19, 2011 (Def. Ex. 400),  which practice was referenced by Mayor Thomas S. Richards on June 27,  2011 in his letter (Def. Ex. 402) seeking the participation of individuals

identified by Senior Management in Voice of the Employee focus groups to clarify, discuss and improve these guidelines. *See e.g.*, *Soto v. Schembri*, 960 F. Supp. 751 (S.D.N.Y. 1997) (New York City's mayor, the city council and the personnel director are the final decision makers in personnel decisions, not the heads of agencies). Although Plaintiffs' attorney at various points during the trial argued that Manager St. Aubin was a "high-ranking" City of Rochester official, such arguments did not constitute evidence or suffice to make up for the absence of any direct proof that concomitant or synchronous with her position as operations manager, Manager St. Aubin was authorized to make final, municipal policy.[16] "Attorney argument is no substitute for evidence." *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (2d Cir. 2005).

Third, nor does the evidence disclose the existence of permanent, persistent and widespread custom or practice such that the City of Rochester and its policymakers had actual or constructive knowledge of such custom or practice and acquiesced therein. While the Court is not persuaded to accept Defendant's position that evidence in the record overwhelmingly supports St. Aubin's claims that she only requested English be spoken when she addressed Plaintiffs regarding their work capacity, and then, only in attempts to communicate with Plaintiffs regarding City business, the sporadic "speak English-only" incidents were confined to a discreet time period late in 2010 and during the first few months of 2011, with several Plaintiffs testifying to overlapping incidents wherein other Plaintiffs were present.

Indeed, the uncontradicted evidence demonstrates that within two days of the very first occasion that Plaintiffs brought the conduct attributed to Manager St. Aubin to the attention of any City of Rochester official, Commissioner Holohan, along with several other City of

---

[16] Nor was there presented  any evidence to show that Manager St. Aubin had the power or authority to fire or subject Plaintiffs to any employment-related consequences, adverse or otherwise.  Moreover, the transcribed record is devoid of any evidence from which to conclude that as a result of Manager St. Aubin's requests that English be spoken in the described circumstances, any Plaintiff suffered negative employment-related consequences for speaking Spanish.

Rochester officials, including Manager St. Aubin, met with Plaintiffs to discuss their concerns. Moreover, little more than a month passed between the lodging of these complaints on or about April 7, 2011, and May 19, 2011, the date on which Commissioner Holohan held the second meeting with Plaintiffs' during which the City of Rochester's written non-discrimination policy was disseminated. There is nothing in the record from which to conclude that the length of time between this initial notification and the second meeting on May 19, 2011, was unduly unreasonable, or to suggest that any interim delay occurred as the result of a deliberate, calculated lack of response, so as to imply on the part of City of Rochester and its policymaking officials, the ratification of, or acquiescence in violations of Plaintiffs' rights. Significantly, no Plaintiff testified to any further incidence or occurrence of such conduct either after the first meeting with Commissioner Holohan and prior to filing this lawsuit, or at any time thereafter.

Fourth, the record is devoid of any evidence offered by Plaintiffs demonstrating that the City of Rochester, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the claimed violations.

For the above-cited reasons and giving credence to the evidence favoring Plaintiffs, as well as that evidence supporting the moving Defendant that is uncontradicted and unimpeached, as this Court must do, I agree with Defendant that the verdict returned against Manager St. Aubin is inconsistent with the verdicts returned in favor of the City of Rochester and Commissioner Holohan regarding the Second Cause of Action. The evidentiary record as reflected above was insufficient to establish liability under § 1983.

### IV.    Conclusion

For the reasons set forth herein above, Defendant's motion for judgment as a matter of

law pursuant to Fed. R. Civ. P. 50(b) is granted and judgment is entered, hereby, dismissing the Complaint as against Manager St. Aubin.   In the event that the judgment is subsequently vacated or reversed on appeal, Defendant's motion in the alternative for a new trial is conditionally granted pursuant to Fed. R. Civ. P. 50(c)(1), because I find, based on the reasons stated hereinabove, that the jury reached a seriously erroneous result and the verdict is against the weight of the evidence.   Having granted Defendant's motion for judgment as a matter of law, the Court hereby denies Plaintiffs' motion for costs and attorney's fees as moot, since they are non-prevailing parties. *See* 42 U.S.C. § 1988.

     IT IS SO ORDERED.

Dated: March 31, 2014
      Rochester, New York

                                HON. FRANK P. GERACI, JR.
                                UNITED STATES DISTRICT JUDGE